Richard Ashman et al., Exrs. of Mary Jane Ashman, Deceased, et al., Plffs. in Err., *v.* R. B. Wigton et al.

R. B. Wigton et al., Plffs. in Err., *v.* Richard Ashman et al., Exrs. of Mary Jane Ashman, Deceased, et al.

Where the surface is owned by one person and the underlying coal by another the surface owner's possession of the surface gives him no right whatever in the coal; and hence his intrusion renders him a trespasser.

The owner of the surface is therefore liable in an action of trespass *q. c. f.*, to the owner of the coal, for mining and removing it without license.

A grant of all the coal on the northwest side of a gangway to be run from a point, within a tract, "northeast to cross the tract aforesaid at water level which route is to be ascertained by a survey after the gangway has been commenced" conveys only the coal included in and north of the angle formed at the point of beginning, by the gangway as laid out and a line drawn from that point northwestwardly at right angles to the general direction of the gangway.

(Argued May 5, 1887. Decided October 3, 1887.)

January Term, 1887, Nos. 289, 360, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error (two writs) to the Common Pleas of Clearfield County to review a judgment on a verdict for the plaintiffs in an action of trespass *quare clausum fregit*. As to the first writ, reversed; as to the second, affirmed.

The facts as they appeared at the trial before WILLIAMS, P. J., were as follows:

In 1867 Mrs. Ashman was the owner in possession of a certain tract of coal mining land, and Messrs. Wigton and Dorris were interested in other coal land in the same vicinity; and in order to develop them desired to run a railroad through Mrs. Ashman's land; and she, in consideration of the supposed advantage to

Cited in Finnegan v. Stineman, 5 Pa. Super. Ct. 124, 131, 28 Pittsb. L. J. N. S. 61, 41 W. N. C. 19.

NOTE.—See note to Phoenix Iron Co. v. Lewis, 2 Sad. Rep. 7.

her, entered into an agreement, the material portion of which is set forth in the opinion of the court.

A gangway also provided for under that portion of said agreement was built according to the terms of the contract running northeast and southwest where coal was mined for several years by Wigton and Dorris.

By subsequent agreement Mrs. Ashman conveyed an undivided half of this property to one Pardee, one of the plaintiffs, subject to the agreement with Wigton and Dorris. Mrs. Ashman died and the plaintiffs, her executors, and said Pardee brought this suit claiming to recover for coal alleged to have been taken by Wigton and Dorris outside of the limits of their contract.

Under the rulings of the court plaintiffs recovered for some coal taken out by Wigton and Dorris on the southeast of the gangway. But the evidence showed a large amount of coal to have been taken by Wigton and Dorris from the southwest corner of the Ashman tract and west of Weiss Run. According to plaintiffs' construction of the article this was not within the limit of defendants' coal right. As the ruling of the court prevented plaintiffs' recovery for this coal they have taken their writ of error. The defendants by their writ of error sought to review the ruling which permitted any recovery whatever.

*McEnally & McCurdy* and *W. H. Woods,* for plaintiffs below. —Wigton and Dorris had under the agreement no right to mine coal, except such as lay northwest of the gangway as actually made, and between parallel lines drawn northwestwardly from the two ends of the gangway.

*Orvis & Snyder* and *Murray & Gordon,* for defendants below. —Wigton and Dorris were entitled to mine not merely the coal lying northwest of the gangway as actually made, but all coal in the tract lying northwest of the line of the gangway prolonged through the tract.

Where the starting point is fixed, and the course of the line running from it is designated, these determine the boundary. The maxim, *Id certum est quod certum reddi potest,* applies. Hagey v. Detweiler, 35 Pa. 409, 413; Flagg v. Thurston, 13 Pick. 145.

The boundary is explicit and unambiguous, on the face of the contract, and there is no difficulty in ascertaining its starting

point and course. Therefore it is simply a question of the construction of the contract; and outside proof, if offered, would not have been admissible to show its application to another line or limit.

In applying descriptions to local objects, it must be understood that the parties had reference to local objects as they existed at the time the deed was made, unless there is something to control this presumption. Stearns v. Rice, 14 Pick. 411, 413.

It is the intention of the parties as expressed, and not an intent to be proved by evidence *aliunde,* and not expressed, which must govern. Cook v. Babcock, 7 Cush. 528; Beeson v. Hutchison, 4 Watts, 442; Simpson v. Murray, 2 Pa. St. 76.

If a deed in express terms fix one of the boundaries at a certain distance from an established line, evidence of measurements from other points not referred to in the deed, for the purpose of fixing that boundary, is inadmissible unless it be shown that the position of the established line referred to cannot now be ascertained. Liverpool Wharf v. Prescott, 4 Allen, 22.

Plaintiffs in error having title to the line designated by the contract, the mode or manner of taking out the coal cannot affect their title. They could open any number of gangways, but their title to that boundary would remain.

Every presumption is against a construction of the grant which abridges or narrows its limits, for the reason that such construction operates as a forfeiture *pro tanto.* Newman v. Rutter, 8 Watts, 51; McKnight v. Kreutz, 51 Pa. 232; Helme v. Philadelphia L. Ins. Co. 61 Pa. 107, 100 Am. Dec. 621.

The plaintiffs in error having entered into possession of the Christian Wirtz, Jr., tract, under the contract of April 27, 1869, and having so continued in possession until the bringing of the suit, were not liable in trespass even if they did exceed their limits.

Under the grant they were in possession of both the surface and the mineral estate, with buildings and improvements. Their possession was not by operation or authority of law but by express contract with the defendants in error. In such case the rule is applicable that for an excess over what is covered by the grant, trespass does not lie.

To enable a person to bring an action of trespass *quare clausum fregit* he must have actual possession of the land. 2 Rapalje & L. Law Dict. 1292; Weitzel v. Marr, 46 Pa. 463.

Trespass will lie against one who enters on land by authority of law for exceeding his authority after entry; but it will not lie against one who has entered under a contract with the owner, for an injury done to the premises, before the term of consent has been determined. Boults v. Mitchell, 15 Pa. 371.

One exceeding his authority after an entry under authority of law is a trespasser, *aliter* for abuse of authority after entry under contract. Narehood v. Wilhelm, 69 Pa. 64; Berkey v. Auman, 91 Pa. 481.

*McEnally & McCurdy* and *W. H. Woods,* in reply.—The cases quoted by the other side distinctly admit and declare that where a person or party has any exclusive right in real estate he can, in vindication of his rights, legally maintain an action of trespass *quare clausum fregit* against anyone, even against a party who may have other interests in the soil.

Whenever there is an exclusive right, trespass may be supported, although the party has not the absolute right to the soil or the whole property therein; as if a person have an exclusive right to cut turf and peat, or cut thorns, he may support trespass *quare clausum fregit,* and for cutting the turf. 1 Chitty, Pl. p. 163; Forsythe v. Price, 8 Watts, 282, 34 Am. Dec. 465; Kissecker v. Monn, 36 Pa. 313, 78 Am. Dec. 379.

OPINION BY MR. CHIEF JUSTICE GORDON:

The principal controversy in this case, the only one that we need specially notice, is that arising on the answer of the court below to the fourth point of the plaintiffs below, which point and answer are as follows:

"The defendants had no right to the coal in those portions of the land belonging to Mrs. Ashman, or to Ashman and Pardee, which were south or east of said gangway." *Answer,* "If by these words 'south or east of said gangway' is meant the southeast side of the gangway, we affirm this point. The contract provided for the division of the warrant for mining purposes upon the line of the gangway from the present coal shaft near the division line between Christian Wirtz, Jr. and William Wirtz. The coal on the northwest of this line belonging to defendants, and to be paid for by a conveyance of an equal amount of coal land from the Philip Stone, on the northeast side of the line, to the Ashmans, this is a fair and reasonable arrangement

adopted to advance the interests and suit the convenience of both parties to the contract."

It will be observed that in the construction of the agreement of the 27th of April, 1869, the court adopted, not the gangway itself, but the line of the gangway, or drift extended to the southern boundary of the tract, as the true division of the coal between the contestant parties. In this we are constrained to dissent from the conclusion thus adopted by the learned judge. The contract referred to reads in this manner: "Also the right to run a gangway, commencing at a point on Weiss Spring Run, near where the present coal shaft is sunk, and near the division line between the Christian Wirtz and William Wirtz, thence running northeast to cross the tract aforesaid at water level, which route is to be ascertained by a survey after the gangway has been commenced. And the said Wigton and Dorris, their heirs, and assigns are to have and possess all the coal on the northwest side of said gangway, and the said Ashman and wife, their heirs, and assigns, to have and possess all the coal on the northeast (southeast) side of said gangway."

From the above it will be observed that what the parties had mainly in view, was not a line but a drift or gangway, to begin near a certain coal shaft, and to run across the Christian Wirtz tract. The direction mentioned was evidently not specific but approximate only, for the line was to cross the tract at water level, and to be ascertained after the gangway had been commenced; so, as the water level could not be ascertained until after the gangway was commenced, necessarily its direction could not be known until after that event.

Moreover, a strict water level could not be followed; otherwise the drift could not be drained, an element essential to its use. It follows that direction, to a certain extent, must depend upon the judgment of those employed by Wigton and Dorris to dig the gangway. But Wigton and Dorris were the parties to determine this matter; and when they had determined it, and had constructed the gangway, they also had determined and absolutely fixed the line between themselves, and Mrs. Ashman; for they, Wigton and Dorris, "are to have and possess all the coal on the northwest side of said gangway, and said Ashman and wife to have and possess all the coal on the northeast side of said gangway."

Nothing can be plainer than this: but one gangway was con-

templated, and not, as the defendants contend, two or more until they reached the water level; and when that was constructed, the rights of the parties, in respect to the coal, were definitely fixed and settled. But if we are limited to the gangway, we are not permitted to extend the line of it south of its commencement for we would thus abandon the true line fixed in the ground, and in that event we might as well adopt the logic of the defense throughout. This, however, the court below properly refused to do, but seems to have overlooked the fact that if the gangway was to be adopted as the true partition line, it must needs be adopted throughout; must start where it begins and stop where it ends; we must have regard, not only to the line but to its corners.

It follows that the defendants had no right to the coal south of the south end of the gangway, and of a line drawn at right angles to its general direction, and extending to the western line of the tract.

As to the contention of the defendants, on their writ of error, that as they were in possession of the premises the action of trespass cannot be sustained, we have but to say: The only lawful possession they had of the land east and south of the gangway was of the surface; but as the coal and surface were distinct estates their possession of the latter gave them no right whatever in the former; hence, their intrusion into the plaintiffs' coal rendered them trespassers.

The judgment in the first stated writ of error, Richard Ashman *et al.* v. R. B. Wigton *et al.,* is reversed, and a new *venire* ordered.

The judgment as to the second writ is affirmed.